IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THOMAS McMILLAN, | ) | CIVIL NO. 11-00430 SOM-BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY JUDGMENT, |
| vs. | ) | AND DENYING PLAINTIFF'S |
| | ) | COUNTERMOTION FOR SUMMARY |
| BOY SCOUTS OF AMERICA-ALOHA | ) | JUDGMENT |
| COUNCIL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND DENYING PLAINTIFF'S COUNTERMOTION FOR SUMMARY JUDGMENT**

I.      INTRODUCTION.

Plaintiff Thomas McMillan claims he was denied overtime pay by his employer, Defendant Boy Scouts of America-Aloha Council ("Aloha Council"), in violation of the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 <u>et seq.</u>, and, in the alternative, Hawaii wage and hour law, section 387-3 of Hawaii Revised Statutes.  McMillan, whose primary duties included maintaining Aloha Council's campgrounds, argues that Aloha Council improperly considered him exempt from the FLSA's requirement that employees who work more than 40 hours per week be paid overtime wages.  Both parties now seek summary judgment with respect to the FLSA claim.  The court grants Aloha Council's motion and denies McMillan's motion.

II.      **FACTUAL BACKGROUND.**

Aloha Council administers camping programs for the Boy Scouts of America in Hawaii.  Def.'s Concise Statement of Facts in Supp. of Mot. for Summ. J. ¶¶ 1, 5, ECF No. 30 ("Def.'s Facts").  It runs three campgrounds in Hawaii: Camp Pupukea (on Oahu), Camp Alan Faye (on Kauai), and Camp Honokaia (on the island of Hawaii).  Id. ¶ 5.  Each campground offers, among other things, lodging, campsites, a dining area, trails, and various recreational services.  Id. ¶ 6.  According to Aloha Council, each campground operates almost entirely as a summer camp.  Id. ¶ 7.  McMillan contends that substantial activity occurs at Camp Pupukea throughout the year.  Pl.'s Concise Statement of Facts in Opp. to Def.'s Concise Statement of Facts ("Pl.'s Facts in Opp.") No. 7, ECF No. 38.

McMillan was employed by Aloha Council from March 1, 2007, until May 31, 2011.  Id. ¶ 8.  From March 1, 2007, until December 31, 2010, his job title was "Council Properties Superintendent/Camp Ranger."  Id.  From January 1, 2011, until May 31, 2011, his position was "Outdoor Programs and Properties Support Team Leader."  Id.  Aloha Council deemed both positions exempt from the requirement in the FLSA and Hawaii's wage and hour law that an employee be paid overtime wages.  Id. ¶ 9.

As an employee of Aloha Council, McMillan spent 85 percent of his time serving as Camp Ranger for Camp Pupukea.  His

duties as Camp Ranger included various maintenance work such as servicing the swimming pool, lodging areas, and the campsite's vehicles; performing yardwork; inspecting safety equipment; checking in guests; and scheduling service projects. <u>See</u> Def.'s Facts ¶ 10; Decl. of Kevin P. McLaughlin Ex. E, ECF No. 30-1. McMillan spent 8 percent of his time establishing maintenance schedules and improvement plans and maintaining and repairing Aloha Council's other campsites. <u>Id.</u> He spent 5 percent of his time serving on committees, such as the "Property and Risk Management Committee," and developing maintenance budgets for each campground. <u>Id.</u> The remaining 2 percent of his time was spent on "negligible" duties, according to McMillan's response to Aloha Council's discovery requests. Def.'s Facts ¶ 10; McLaughlin Decl. Ex. D.

More specifically, McMillan submits documents showing that he worked a total of 1540 days at Aloha Council. Def.'s Facts ¶¶ 11-13; McLaughlin Decl. Ex. E. On 1536 days, McMillan spent at least part of the day working on tasks related to one or more of Aloha Council's campgrounds. <u>Id.</u> On 172 days, he spent part of the day working on tasks indirectly related to the camps, such as attending meetings, creating agendas, and planning programs. <u>Id.</u> On 46 days, he spent part of the day on maintenance tasks for Aloha Council's headquarters, called the "Service Center." <u>Id.</u>

McMillan now seeks overtime pay for the hours he worked in excess of 40 hours per week.

## III.       SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. Catrett, 477 U.S. 317, 323 (1986)); accord Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006).  "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.  When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were uncontroverted at trial.  Id. (quoting C.A.R. Transp. Brokerage

<u>Co., Inc. v. Darden Rest., Inc.</u>, 213 F.3d 474, 480 (9th Cir. 2000)). When the nonmoving party bears the burden of proof on one or more issues at trial, the party moving for summary judgment may satisfy its burden with respect to those issues by pointing out to the court an absence of evidence from the nonmoving party. <u>Miller</u>, 454 F.3d at 987.

When the moving party meets its initial burden on a summary judgment motion, "[t]he burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." <u>Id.</u> The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. <u>See</u> <u>Balint v. Carson City, Nev.</u>, 180 F.3d 1047, 1054 (9th Cir. 1999). On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." <u>Miller</u>, 454 F.3d at 988 (brackets omitted) (quoting <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999)).

Summary judgment may also be appropriate when a mixed question of fact and law involves undisputed underlying facts. <u>See</u> <u>EEOC v. UPS</u>, 424 F.3d 1060, 1068 (9th Cir. 2005); <u>Colacurcio v. City of Kent</u>, 163 F.3d 545, 549 (9th Cir. 1998).

**IV.     ANALYSIS.**

Under the FLSA, employers generally must pay their employees at least one and one-half times their regular rate of

pay for hours worked in excess of 40 hours in a week. See 29 U.S.C. § 207(a)(1). Certain employees are exempt from that overtime requirement. See 29 U.S.C. §§ 213(a). "Employers have the burden of demonstrating that a particular employee, or category of employees, is not within the ambit of the overtime provision." Gieg v. DDR, Inc., 407 F.3d 1038, 1046 (9th Cir. 2005) (citing Donovan v. Nekton, Inc., 703 F.2d 1148, 1151 (9th Cir. 1983) (per curiam)). The exemptions to the FLSA are to be "narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress." Id. (quoting Donovan, 703 F.2d at 1151).

Aloha Council argues that all of McMillan's work is exempted from the overtime provisions in the FLSA. First, it argues that his work is covered by § 213(a)(3), which exempts employees employed by seasonal organized camps. It argues that the maintenance work done by McMillan at the campgrounds clearly falls within the exception, as it was directly related to the campgrounds' operation. Aloha Council argues that the remaining work performed by McMillan, while not directly benefitting the campgrounds, is permitted under 29 C.F.R. § 779.311 because it was insignificant and incidental.

In the alternative, Aloha Council argues that McMillan was exempt from the overtime requirement based on a combination of two exemptions. It argues that the maintenance work done by

6

McMillan at the campgrounds is covered by § 213(a)(3), and that his remaining work falls under § 213(1)(a), which exempts employees employed in an administrative capacity.

## A. Campground Work.

Under 29 U.S.C. § 213(a)(3), an employer need not pay overtime wages for "any employee employed by an establishment which is an . . . organized camp . . . if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 ⅓ per centum of its average receipts for the other six months of such year."

McMillan does not dispute that Aloha Council's camps are "organized camps" within the meaning of § 213(a)(3), or that each of Aloha Council's camps is a separate establishment. The federal regulations interpreting the FLSA define an establishment as a "distinct physical place of business."[1]  29 C.F.R. § 779.23.

---

[1] Although 29 C.F.R. § 779.23 appears in Part 779, which expressly relates to retailers of goods and services, other courts and the Department of Labor have applied various sections within Part 779 to other exemptions stated in § 213(a).  See, e.g., Alvarez Perez, 515 F.3d at 1157-58 (11th Cir. 2008) ("We stated that § 779.305 applies not only to the retail and service establishment exemption, but also to a number of exemptions listed in 29 C.F.R. § 779.302, including the hotel establishment exemption." (citing Marshall v. Sundial Assoc., Ltd., 588 F.2d 120, 123 n.2 (5th Cir. 1979) (explaining that § 779.305 is to be applied to a number of exemptions including § 213(b)(8))));  Chao v. Double JJ Resort Ranch, 375 F.3d 393, 398-99 (6th Cir. 2004) (instructing the district court to apply 29 C.F.R. § 779.305 on remand to determine whether an employer qualified for an exemption under § 213(a)(3)); Dep't of Labor, Opinion Letter No.

7

Each of Aloha Council's campgrounds is a physically distinct physical place of business. In an opinion letter, the Department of Labor stated that 45 base camps owned by the same organization were likely separate establishments because they were physically remote from one another. Dep't of Labor, Opinion Letter No. FLSA2006-37, 2006 WL 3227792, at *1 (Sept. 28, 2006) ("Sept. 28, 2006, Opinion Letter"). This court accords the Department of Labor's opinion letters deference. See Solis v. Washington, 656 F.3d 1079, 1085 (9th Cir. 2011) (relying on two Department of Labor opinion letters, and stating: "The DOL's interpretation of its own regulations generally is accorded controlling deference 'unless plainly erroneous or inconsistent with the regulation.'" (quoting Auer v. Robbins, 519 U.S. 452, 461 (1997))).

Although it is not clear if any of the campgrounds operates for only seven months per year, Aloha Council submits accounting reports showing that its campgrounds meet § 213(a)(3)'s alternative requirement that its average receipts for any six months amount to no more than 33 ⅓ percent of its average receipts for the other six months of the year. Def.s' Facts ¶ 7; Decl. of Rick Burr Exs. B-D, ECF Nos. 30-13, 30-14, 30-15. The Sixth Circuit says that "receipts" as used in § 213(a)(3) refers to when cash is received, not when money is

FLSA2006-37, 2006 WL 3227792, at *1 (Sept. 28, 2006). This court relies on sections within Part 779 throughout this order.

8

recorded as income.  <u>Bridewell v. Cincinnati Reds</u>, 155 F.3d 828,
830-32 (6th Cir. 1998).  The Sixth Circuit thus held that an
establishment was not exempt when it met the receipts requirement
based on an accrual method of accounting--which records money as
income only when the underlying obligation (such as delivery of
the product or performance of the service) has taken place--but
did not meet the requirement based on a cash method, which
records money as income when it is received.  <u>Id.</u>  The Ninth
Circuit has not addressed this issue.

Aloha Council's accounting reports appear to reflect
the cash method of accounting, and the Chief Executive Officer of
the Boy Scouts of America states in his declaration that Aloha
Council's average "receipts" meet § 213(a)(3)'s receipts
requirement.  McMillan says that he needs further discovery to
determine whether the receipts were obtained on a cash or accrual
basis.  However, as discussed below, he fails to make a proper
request under Rule 56(d) of the Federal Rules of Procedure.  The
court relies on the record before it in ruling that Aloha
Council's camps are establishments subject to the exemption
stated in § 213(a)(3).

At the hearing on the present motions, McMillan took
the position that Camp Pupukea is actually two separate
establishments: a four-week summer program, and the rest of Camp
Pupukea's operations.  McMillan argued that he was employed by

Camp Pupukea's other operations, which cannot meet the receipts requirement in § 213(a)(3) and do not operate for only seven months in a year. McMillan raised this argument for the first time at the hearing.

The federal regulations explain that separate establishments may exist on the same premises. 29 C.F.R. § 779.305. For this court to consider Camp Pupukea's four-week program a separate establishment, the program must be "physically separated from the other activities," and be "functionally operated as a separate unit having separate records, and separate bookkeeping." See id. Also, there must not be any "interchange of employees" between the four-week program and Camp Pupukea's other activities, although an employee of one establishment may occasionally render some help in the other establishment. See id.

The First and Eleventh Circuits have held that physical separation is less important when two business operations are conducted at different times or during different seasons. Alvarez Perez, 515 F.3d at 1158; Marshall v. N.H. Jockey Club, Inc., 562 F.2d 1321, 1331 n.3 (1st Cir. 1977). Regardless of whether Camp Pupukea does or does not run afoul of the physical separation requirement, there is no indication that Aloha Council operates the four-week program as a unit separate from any other activities at Camp Pupukea, or that the four-week program does

not interchange employees with the rest of Camp Pupukea's
operations.

Aloha Council demonstrates that its camps are separate
establishments, meeting its initial burden on a summary judgment
motion. McMillan fails to meet his burden of coming forward with
evidence showing that Camp Pupukea should actually be considered
two establishments. To the extent McMillan seeks additional
discovery on that issue, as discussed below, he fails to properly
make such a request under Rule 56(d) of the Federal Rules of
Civil Procedure. The court declines to consider Camp Pupukea's
four-week program a separate establishment under § 213(a)(3).

Turning next to whether McMillan's work at the
campgrounds is covered by the exemption, the court disagrees with
McMillan that the nature of his work puts him outside the scope
of § 213(a)(3). McMillan appears to argue that, because he
worked year-round and performed a wide array of activities to
maintain the campgrounds, his work is not the type of work
contemplated by the exception. He draws a parallel between
himself and someone hired to work solely for the four-week
program, who, McMillan concedes, would be exempt from overtime
pay.

Rather than focusing on the nature of the work, the
applicable federal regulations state that the exemption
"depend[s] on the character of the establishment." 29 C.F.R.

§ 779.302. "[I]f the establishment meets the tests enumerated in these sections, employees 'employed by' that establishment are generally exempt" from the FLSA's overtime provision. Id. See also Hamilton v. Tulsa Cnty. Public Facilities Auth., 85 F.3d 494, 497 (10th Cir. 1996) ("It is the character of the revenue producing activity which affords the employer the protection of the exemption." (citing 29 C.F.R. § 779.302; Hays v. City of Pauls Valley, 74 F.3d 1002, 1006 (10th Cir. 1996); Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 596 (11th Cir. 1995); Marshall, 562 F.2d at 1331 n.4; Brennan v. S. Prod., Inc., 513 F.2d 740, 746-47 (6th Cir. 1975))); Sept. 28, 2006, Opinion Letter, 2006 WL 3227792, at *1 ("If a base camp qualifies for the section 13(a)(3) exemption, then all the employees of that base camp are exempt from the FLSA overtime requirements.").

The federal regulations also state, "In order to meet the requirement of actual employment 'by' the establishment, an employee, whether performing his duties inside or outside the establishment, must be employed by his employer in the work of the exempt establishment itself in activities within the scope of its exempt business." 29 C.F.R. § 779.308. Thus, if McMillan's work falls within the scope of the campgrounds' businesses, McMillan is subject to the § 213(a)(3) exemption.

In Gieg, 407 F.3d at 1049-50, the Ninth Circuit considered section 779.308 in determining whether employees were

employed in activities within the scope of a car dealership's exempt retail business. The employees in issue were finance and insurance managers of retail automobile dealerships. Id. The Ninth Circuit disagreed with the district court's conclusion that, because the employees in issue were not engaged in retail activity, the managers did not fall within the exemption that pertained to retail establishments, 29 U.S.C. § 207(i). Id.

Analyzing the cases cited in section 779.308, in which courts had found that employees were not employed in the work of the exempt establishment, the Ninth Circuit explained that those cases "involved an employer engaged in a business endeavor that was truly separate from, and not at all related to, the exempt business of the establishment." Id. at 1050. The Ninth Circuit explained that the employees in issue in those cases worked for distinct departments that were "wholly 'extraneous' to the work targeted by the relevant exemption." Id. at 1051. By contrast, in Gieg, "the duties performed by the finance officers were an integral, and integrated, part of their employer's auto dealership operations as a whole." Id. at 1052 (quoting a Department of Labor amicus brief).

McMillan spent 85 percent of his time serving as Camp Ranger at Camp Pupukea and 8 percent of his time making maintenance schedules and action plans for the other campgrounds. Moreover, he does not dispute that he spent at least part of 1536

13

days working for one or more of Aloha Council's campgrounds. <u>See</u>
Pl.'s Memo. in Opp. to Def.'s Mot. for Summary J. at 17, May 2,
2012, ECF No. 37. McMillan's duties, which generally called for
maintaining the campgrounds and their facilities, constituted an
integral part of operating campsites. Those duties therefore
qualify as activities within the scope of the campgrounds'
business. <u>See</u> Dep't of Labor, Opinion Letter, 2000 WL 35432058,
at *2 (May 23, 2000) ("May 23, 2000, Opinion Letter")
("Maintenance employees who engage in maintenance and repair work
which is a routine, normal incident to the operation of the
exempt summer camp would come within the exemption for the entire
year."). That McMillan worked year-round does not preclude this
court from considering his work within the scope of the
campgrounds' business. <u>See</u> <u>Jeffery</u>, 64 F.3d at 596 ("The focus
on the [§ 213(a)(3)] exemption is not on the length of time
Plaintiff performed his work. Rather, the focus is on length of
the Defendant's seasonal operation.").

The court is unpersuaded by McMillan's reliance on
<u>Brennan v. Six Flags Over Georgia, Ltd.</u>, 474 F.2d 18 (5th Cir.
1973), and <u>Donovan v. S & L Development Co.</u>, 647 F.2d 14, 17 (9th
Cir. 1981). In particular, McMillan relies on the Fifth
Circuit's statement in <u>Brennan</u> that "[i]t is the character of the
work, not the source of the remuneration, that controls" in

14

arguing that his maintenance work is not subject to the exemption under § 213(a)(3).

In _Brennan_, the Fifth Circuit held that construction work by maintenance employees at a recreational establishment was subject to the overtime provision in the FLSA because, if a general contractor had been hired to do that work, the contractor would not have been operating a recreational establishment.  _Id._ at 19.  Construction work, however, is distinguishable from maintenance work.  The Department of Labor has stated that employees of an exempt establishment who engage in construction do not qualify for the § 213(a)(3) exemption.  _See_ May 23, 2000, Opinion Letter, 2000 WL 35432058, at *2 ("Employees of a section 13(a)(3) exempt establishment who engage in construction or reconstruction work do not qualify for the section 13(a)(3) exemption in any workweek in which they are so engaged.").  Neither the Department of Labor nor _Brennan_ states that an employee's maintenance work falls outside the § 213(a)(3) exemption.  Rather, in the May 23, 2000, opinion letter cited earlier in this order, the Department of Labor stated that employees who performed maintenance work would qualify for the exemption.  _See_ May 23, 2000, Opinion Letter, at *2 ("Maintenance employees who engage in maintenance and repair work which is a routine, normal incident to the operation of the exempt summer camp would come within the exemption for the entire year.").

McMillan points to no evidence demonstrating that he performed construction. Nor does he cite any authority equating construction with maintenance. Moreover, unlike Gieg, Brennan is not binding on this court, and the Tenth Circuit has expressly rejected Brennan's statement that the nature of the work controls application of the exemption. Hamilton, 85 F.3d at 497 n.3.

Donovan, 647 F.2d at 17, cites Brennan and quotes as a parenthetical the statement that McMillan relies on.[2] McMillan fails to show how Donovan is instructive here. It addressed whether the FLSA applied at all, not whether a particular exception applied.

_____

[2] Donovan, 647 F.2d at 17, states:

> In our view, Congress intended to cover full-time construction workers for short-term projects whether they are employed by contractors or by other enterprises which engage in construction work. The construction workers employed by S & L did the same kind of work that they would have done had they been employed by an independent contractor. We find "no valid reason to discriminate between the two types of employees." Wirtz v. Allen Green & Associates, Inc., 379 F.2d 198, 199 (6th Cir. 1967) (finding of coverage based on the fact that the construction employees performed "the same kind of work"). See also Brennan v. Six Flags Over Georgia, Ltd., 474 F.2d 18, 19 (5th Cir.), cert. denied, 414 U.S. 827, 94 S.Ct. 47, 38 L.Ed.2d 61 (1973) ("It is the character of the work, not the source of the remuneration, that controls.").

16

Nor does McMillan establish that he was employed by the Service Center, rather than by the campgrounds, for purposes of § 213(a)(3). McMillan argues that, because he had responsibilities at Aloha Council's various locations, including its main office, he was employed by the Service Center. However, an employee may work at more than one exempt establishment within the same organization. See 29 C.F.R § 779.303. As discussed above, each of Aloha Council's campgrounds is a separate establishment. The court recognizes that an employee who performs work for a central organization with multiple establishments is not subject to the exemption, even if the employee actually performs the work at one or more establishments. See 29 C.F.R. § 779.309 (citing Mitchell v. Kroger Co., 248 F.2d 935 (8th Cir. 1957)). But McMillan's maintenance-type work for the campgrounds, which indisputably amounts to 93 percent of his employment, was not in furtherance of Aloha Council's central or organizational functions. Although McMillan points to his job description in support of his position that he actually worked for the Service Center, his job description cannot trump his actual job duties.

The Tenth Circuit case of Brennan v. Yellowstone Park Lines, Inc., 478 F.2d 285, 290 (10th Cir. 1973), does not rescue McMillan's arguments. In that case, the Tenth Circuit agreed with the parties that the § 213(a)(3) exemption did not apply to

"central employees who perform functions which serve several, or all, of the company's establishments." Id. The types of employees listed in Brennan--central accounting office employees, manager's office employees, reservations office employees, and advertising and promotion employees--are not akin to McMillan, as those employees performed work for the organization as a whole. McMillan maintained separate and distinct campgrounds.

Finally, even though Aloha Council, rather than "Camp Pupukea" or any other campground, paid McMillan, that does not mean that McMillan was a central office employee. The federal regulations distinguish between an establishment and an enterprise or business, 29 C.F.R. §§ 779.23, 779.303, and it is not uncommon for a central office, which is typically in charge of fiscal matters, to issue paychecks to all of an organization's employees, even if they do not actually work at the central office. Cf. Marshall, 562 F.2d at 1329, 1333 (holding that two horse-racing companies operating at Rockingham Park were separate establishments even though that they both used time sheets labeled only "Rockingham Park").

The court concludes that, under § 213(a)(3), McMillan is not entitled to overtime pay for the time he spent doing work for Aloha Council's campgrounds.

## B.    Rule 56(d) Request.

McMillan's only challenge to Aloha Council's designation of its campgrounds as "establishments" is that he needs further discovery regarding how long each of the camps operates each year and how Aloha Council reports the campgrounds' income.  McMillan appears to be invoking Rule 56(d) of the Federal Rules of Civil Procedure.

Under Rule 56(d),[3] the court may deny a summary judgment motion "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  "Failure to comply with the requirements of Rule 56([d]) is a proper ground for denying discovery and proceeding to summary judgment."  Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986); see also Tatum v. City and Cnty. of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006) (finding insufficient to support a Rule 56([d]) continuance an attorney's declaration that failed to explain how a continuance would allow the party to produce evidence precluding summary judgment).

"To prevail on a Rule 56([d]) motion, the movant must also show diligence in previously pursuing discovery."  See Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co., 732 F. Supp.

---

[3]  The provisions now found in subsection (d) of Rule 56 were set forth in subsection (f) prior to December 1, 2010.

2d 1107, 1124 (D. Haw. 2010).  Rule 56(d) requires a court to permit additional discovery only when "the non-moving party has not had the opportunity to discover information that is essential to its opposition."  Roberts v. McAfee, Inc., 660 F.3d 1156, 1169 (9th Cir. 2011) (quoting Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001)).  The party seeking additional discovery "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."  Tatum, 414 F.3d at 1100 (citations omitted).

McMillan fails to show that he has not had the opportunity to discover the information he seeks.  The filings indicate that both parties have already engaged in discovery.  See, e.g., Decl. of William Lee ¶ 6, ECF No. 38-11 (referring to Defendant's Response to Plaintiff's Request for Production dated November 1, 2011).  McMillan was aware that Aloha Council was raising the exemption stated in § 213(a)(3), as it was asserted as a defense in its answer.  While the answer stated only that McMillan was employed by Camp Pupukea, not Aloha Council's other campgrounds, the nature of the information relevant to McMillan's claim should have been clear to McMillan.

McMillan also fails to identify the specific facts that further discovery would reveal and how those facts would preclude summary judgment.  Nowhere in his papers does he even mention

Rule 56(d).  In fact, McMillan filed a counter motion for summary judgment, suggesting that he thought there were no triable issues of fact precluding judgment in his favor!  McMillan provides no justification for his failure to come forward with facts showing that Aloha Council's campgrounds are not exempt establishments.  His request for additional time to conduct discovery is denied.

### C.  McMillan's Work Not Directly Related to the Campgrounds.

Aloha Council first argues that any work McMillan performed that did not directly benefit the campgrounds is permitted under 29 C.F.R. § 779.311 because it was insignificant and incidental.  Section 779.311 allows an employee employed by an exempt establishment to perform an insignificant amount of incidental work for a nonexempt establishment.

Although McMillan's remaining work, which amounts to only 7 percent of his employment, may well be insignificant and incidental, it is unclear whether section 779.311 applies to § 213(a)(3).  Unlike the other sections within Part 779 relied on by this court, section 779.311 expressly applies to exemptions for retail and service establishments that were found in §§ 213(a)(2) and (4), which have been repealed:

> An employee who is employed by an
> establishment which qualifies as an exempt
> establishment under section 13(a)(2) or (4)
> is exempt from the minimum wage and overtime
> requirements of the Act even though his
> employer also operates one or more
> establishments which are not exempt. On the

> other hand, it may be stated as a general
> rule that if such an employer employs an
> employee in the work of both exempt and
> nonexempt establishments during the same
> workweek, the employee is not "employed by"
> an exempt establishment during such workweek.
> It is recognized, however, that employees
> performing an insignificant amount of such
> incidental work or performing work
> sporadically for the benefit of another
> establishment of their employer nevertheless,
> are "employed by" their employer's retail
> establishment.

The court need not resolve whether section 779.311 is applicable
to § 213(a)(3) because that 7 percent of McMillan's work, to the
extent not otherwise exempted, fits within the exemption stated
in § 213(a)(1).

Under § 213(a)(1), an employee is exempt from overtime
pay when he or she is "employed in a bona fide executive,
administrative, or professional capacity."  Aloha Council argues
that, to the extent McMillan could be said to have performed work
while not "employed by" the campgrounds, such work should be
deemed to have been done while he was employed by the Service
Center in an administrative capacity.  The federal regulations
define an "employee employed in a bona fide administrative
capacity" as one who is:

> (1) Compensated on a salary or fee basis at a
> rate of not less than $455 per week (or $380
> per week, if employed in American Samoa by
> employers other than the Federal Government),
> exclusive of board, lodging or other
> facilities;

22

> (2) Whose primary duty is the performance of
> office or non-manual work directly related to
> the management or general business operations
> of the employer or the employer's customers;
> and
>
> (3) Whose primary duty includes the exercise
> of discretion and independent judgment with
> respect to matters of significance.

29 C.F.R. § 541.200.  McMillan concedes that the first

requirement is met because he made no less than $455 per week.

In the 7 percent of his work in issue, McMillan

negotiated deed restrictions and a sale of Aloha Council's

properties.  Def.'s Facts ¶ 12; Pl.'s Facts in Opp. No. 12.  He

created job descriptions, operating practices, a master plan for

Aloha Council's programs and properties, and agendas for Aloha

Council's risk management and properties committees.  Id.  He

also performed maintenance work for the Service Center.  Def.'s

Facts ¶ 13; Pl.'s Facts in Opp. No. 13.

The court agrees with Aloha Council that the second and

third requirements stated in section 541.200 are met because

McMillan's duties were primarily nonmanual and included the

exercise of discretion and independent judgment with respect to

matters of significance.  Negotiating deeds, preparing agendas,

participating on committees, and developing a master plan are

significant matters and require independent judgment and

discretion.  They generally "involve the comparison and the

evaluation of possible courses of conduct."  29 C.F.R.

§ 541.202(a).  That McMillan was under the supervision of and took direction from the Scout Executive does not mean that he exercised no discretion or judgment.  As stated in 29 C.F.R. § 541.202(c), "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level . . . .  The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action."  See also Cheatam v. Allstate Ins. Co., 465 F.3d 578, 585 (5th Cir. 2006).

With respect to whether McMillan's work for the central office was primarily nonmanual, the court notes that, of the 281 days McMillan performed work not directly related to any of the campgrounds, only 46 days involved maintenance.  Given the other tasks he performed and the limited time he spent doing manual work, the court concludes that McMillan's primary duties at the central office were nonmanual.  See 29 C.F.R. § 541.700 (explaining that "primary duty" means the most important duty the employee performs and that an employee who spends more than 50 percent of his or her time on exempt work will generally fulfill the "primary duty" requirement); Baldwin v. Trailer Inns, Inc., 266 F.3d 1104 (9th Cir. 2001) (stating that the percentage of time spent on nonexempt tasks is relevant, but not dispositive).

The record establishes that any work by McMillan for the Service Center falls within the exemption stated in § 213(a)(1).

The court also concludes that Aloha Council is permitted to combine the exemptions stated in § 213(a)(1) and § 213(a)(3). Section 779.343 of the Code of Federal Regulations states:

> [W]here an employee during a particular workweek is exclusively engaged in performing two or more activities to which different exemptions are applicable, each of which activities considered separately would be an exempt activity under the applicable exemption if it were the sole activity of the employee for the whole workweek in question, as a matter of enforcement policy the employee will be considered exempt during such workweek.

29 C.F.R. § 779.343.

McMillan contends that section 779.343 is inapplicable in this context, because Part 779 expressly applies to the retail of sales and goods. See 29 C.F.R. § 779.5. However, section 779.343 expressly applies to any exemption in "the Act." In addition, other sections within Part 779 expressly apply to § 213(a)(3). See 29 C.F.R. §§ 779.385, 779.302. Finally, as stated previously in footnote one, other courts have persuasively relied on sections within Part 779 when applying exemptions stated in § 213(a) that do not pertain to retail.

In sum, McMillan is not entitled to any overtime wages. When doing work directly related to Aloha Council's campgrounds,

25

McMillan was exempt from overtime wages under § 213(a)(3).  When doing other work, McMillan was employed in an administrative capacity and exempt from overtime wages under § 213(a)(1).

### D.  Hawaii Revised Statues § 387-3.

The court does not read Aloha Council's present motion as seeking summary judgment on McMillan's claim under Hawaii Revised Statutes § 381-3, as that statute was not addressed in any of the papers relating to this motion.

McMillan's Complaint asserts that this court has supplemental jurisdiction over his Hawaii law claim.[4]  Compl. ¶ 4, July 6, 2011, ECF No. 1.  Supplemental jurisdiction, unlike federal question or diversity jurisdiction, is not mandatory.  A court may decline to exercise supplemental jurisdiction over a state law claim if:  (1) the claim raises a novel or complex issue of state law; (2) the state law claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has

_____

[4]  McMillan's Complaint does not assert diversity jurisdiction and fails to allege facts sufficient to support diversity.  Aloha Council appears to be a citizen of Hawaii, but McMillan's citizenship for diversity purposes is not evident. McMillan alleges that he is a "resident" of Ohio, but that he was formerly a "resident" of Hawaii.  Compl. ¶¶ 4-5.  It is not clear where McMillan is domiciled.  See, e.g., Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001) ("The natural person's state citizenship is . . . determined by her state of domicile, not her state of residence.  A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." (citations omitted)).

dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  <u>See</u> 28 U.S.C. § 1367.

Supplemental jurisdiction is thus a doctrine of discretion, not of a plaintiff's right.  <u>City of Chicago v. Int'l College of Surgeons</u>, 522 U.S. 156, 172 (1997); <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966).  When, as here, "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  <u>Gibbs</u>, 383 U.S. at 726.  Such a dismissal is not "a mandatory rule to be applied inflexibly in all cases," but "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims."  <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).

This court is granting summary judgment on the only claim over which it has original jurisdiction and identifies no factors making this case anything but the usual case in which supplemental jurisdiction is better declined.  However, because the parties have not discussed whether there is any reason (e.g., a statute of limitations issue) this court should exercise

supplemental jurisdiction, this court leaves the state claim for another day.

**V.      CONCLUSION.**

The court GRANTS Aloha Council's summary judgment motion, and DENIES McMillan's summary judgment motion. McMillan's Hawaii law claim remains for future adjudication.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 15, 2012.



_/s/ Susan Oki Mollway_
Susan Oki Mollway
Chief United States District Judge

McMillan v. Boy Scouts of America-Aloha Council; Civil No. 11-00430 SOM/BMK; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S COUNTERMOTION FOR SUMMARY JUDGMENT